**UNITED STATES of America,
Appellee,**

v.

**Edward E. BORDEAUX, Jr., Appellant.**

**No. 04–1369.**

United States Court of Appeals,
Eighth Circuit.

Submitted: Oct. 21, 2004.

Filed: March 7, 2005.

Edward G. Albright, argued, Asst. Federal Public Defender, Pierre, SD (Jeffrey L. Viken, Federal Public Defender, on the brief), for appellant.

Randolph J. Seiler, argued, Asst. U.S. Atty., Pierre, SD, for appellee.

Before MORRIS SHEPPARD ARNOLD, JOHN R. GIBSON, and SMITH, Circuit Judges.

MORRIS SHEPPARD ARNOLD, Circuit Judge.

Edward Bordeaux, Jr., appeals from his conviction and sentence for aggravated sexual abuse, 18 U.S.C. §§ 1153, 2241(c), and 2246(2)(B). He argues that his conviction is flawed because the district court allowed the prosecuting witness to testify via closed-circuit television, admitted testimonial hearsay and other hearsay statements, excluded exculpatory evidence, and denied his motions to suppress, for judgment of acquittal, and for a mistrial. With respect to his sentence, he maintains that the district court violated *Blakely v. Washington,* — U.S. —, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), by making the predicate factual findings for certain sentencing enhancements (unrelated to the fact of a prior conviction) rather than allowing the jury to make them. Because Mr. Bordeaux was denied the opportunity to confront his accuser as provided for in the sixth amendment, we reverse his conviction and vacate his sentence.

I.

A grand jury indicted Mr. Bordeaux on five counts of aggravated sexual abuse of a child; the petit jury acquitted Mr. Bordeaux on all but the first count, which charged that he had put his penis in the mouth of AWH, a female child. Mr. Bordeaux argues that the court should overturn his conviction because he was deprived of his sixth amendment right to confront his accuser when AWH was allowed to testify via closed-circuit television.

AWH took the stand at Mr. Bordeaux's trial. She answered a number of the prosecutor's questions, usually with a single word or movement of the head, before the prosecutor asked the court to allow her to leave the courtroom and testify by two-way closed-circuit television. (A two-way closed-circuit system allows those in the courtroom to watch the witness on television and also allows the witness to see the defendant on television.) The prosecutor believed that AWH would be more forthcoming if allowed to testify this way, though she had already answered affirmatively when asked if Mr. Bordeaux had put his penis in her mouth. Mr. Bordeaux's attorney, who had yet to cross-examine AWH, objected. To resolve the issue, the judge and the attorneys questioned AWH in the judge's chambers. After this question-and-answer session, the court found that AWH was afraid of the defendant and of testifying in front of the jury in the large courtroom. It found that this fear rendered AWH unable to testify in open court and therefore, pursuant to 18 U.S.C. § 3509(b)(1)(B)(i), it held that she could testify from a separate room by two-way closed-circuit television.

The sixth amendment's confrontation clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. Const. amend. VI. We review *de novo* the district court's determination of the protections afforded by the confrontation clause, while we review the underlying factual determinations for clear error. *Cf. United States v. Powell,* 379 F.3d 520, 523 (8th Cir.2004).

The Supreme Court sketched the contours of the confrontation right in cases like this in *Maryland v. Craig,* 497 U.S. 836, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990). In that case, the Court rejected a confrontation clause challenge to a Maryland statute that allowed a child witness in a sex abuse case to testify via a one-way closed-circuit television (which does not allow the witness to view the defendant) under certain circumstances. *Id.* at 860, 110 S.Ct. 3157. It explained that the confrontation clause "reflects a preference for

face-to-face confrontation at trial," but that this preference "must occasionally give way to considerations of public policy and the necessities of the case." *Id.* at 849, 110 S.Ct. 3157 (internal quotations omitted). The Court emphasized, however, that the preference is a strong one and that a defendant's sixth amendment confrontation right "may be satisfied absent a physical, face-to-face confrontation at trial only where denial of such confrontation is necessary to further an important public policy and only where the reliability of the testimony is otherwise assured." *Id.* at 850, 110 S.Ct. 3157.

■ *Craig* sets out three findings that must be made in a case like the present one to establish that the case sufficiently implicates an important public policy ("protecting child witnesses from the trauma of testifying in a child abuse case") to allow testimony by one-way closed-circuit television. *Id.* at 855–56, 110 S.Ct. 3157. For current purposes, the only finding that matters is the second, which is that the child witness would be traumatized by the presence of the defendant, not by the courtroom generally. *Id.* at 856, 110 S.Ct. 3157. Were the child afraid only of the courtroom, she could simply testify in more comfortable surroundings, albeit with the defendant present. *Id.*

After *Craig* was decided, Congress enacted 18 U.S.C. § 3509, which provides alternative procedures to live in-court testimony in child abuse cases. That statute, as pertinent, allows the use of two-way closed-circuit television to present a child's live testimony if "[t]he child is unable to testify [in open court] because of fear." 18 U.S.C. § 3509(b)(1)(B)(i). The statute does not specify that the fear must be of the defendant.

*United States v. Turning Bear,* 357 F.3d 730 (8th Cir.2004), involved a factual situation identical to this one: a child witness testified by two-way closed-circuit television pursuant to § 3509 after a district court found that she was unable to testify in open court because of fear of a combination of things, including the defendant, the jury, and the large courtroom. We held that Mr. Turning Bear's sixth amendment confrontation rights had been violated because the district court had not found, as required by *Craig,* that the trauma caused by the presence of the defendant was the dominant element preventing the child witness from testifying in open court. *Turning Bear,* 357 F.3d at 737. In other words, we concluded that § 3509 was unconstitutional to the extent that it requires a different showing of fear from what *Craig* requires.

■ The government insists that use of two-way closed-circuit television was constitutional in this case. First, it argues that *Craig* does not control because that case involved a one-way closed-circuit television system, and this case involves a two-way system, which, it says, preserves the face-to-face confrontation promised by the sixth amendment. To support the contention that confrontation via a two-way system is constitutionally equivalent to a face-to-face encounter, the government cites *United States v. Gigante,* 166 F.3d 75 (2d Cir.1999), *cert. denied* 528 U.S. 1114, 120 S.Ct. 931, 145 L.Ed.2d 811 (2000). In *Gigante,* the Second Circuit stated that "because [the district judge] employed a two-way system that preserved the face-to-face confrontation ..., it is not necessary to enforce the *Craig* standard in this case." *Id.* at 81. The government distinguishes *Turning Bear* (which, of course, applied *Craig* to a two-way closed-circuit set-up) from Mr. Bordeaux's case on the basis that the parties in *Turning Bear* did not brief or argue the difference between two-way and one-way systems, and the court did not address it. The government

adds that with Craig aside, the district court needed to satisfy only § 3509, which, the government says, it did. Second, the government asserts that, in any event, the district court's findings satisfy Craig because it found that AWH was unable to testify in open court because of the presence of the defendant.

In Turning Bear, we decided that Craig controlled two-way systems as well as one-way systems, and we are bound by that result, United States v. Lippman, 369 F.3d 1039, 1043–44 (8th Cir.2004), cert. denied, — U.S. ——, 125 S.Ct. 942, 160 L.Ed.2d 824 (2005). It does not matter that the government raises a new argument here because our rule about the inability of one panel to second-guess another does not contain an exception for new arguments. If it did, the rule would be eviscerated and the stability of the law in this circuit would be significantly undermined.

■ We conclude, moreover, that Craig would govern this case even if there were not a precedent squarely on point because a "confrontation" via a two-way closed circuit television is not constitutionally equivalent to a face-to-face confrontation. "Confrontation" through a two-way closed-circuit television is not different enough from "confrontation" via a one-way closed-circuit television to justify different treatment under Craig. It is true that a two-way closed-circuit television creates an encounter that more closely approximates a face-to-face confrontation than a one-way closed-circuit television does because a witness can view the defendant with a two-way system. But two-way systems share with one-way systems a trait that by itself justifies the application of Craig: the "confrontations" they create are virtual, and not real in the sense that a face-to-face confrontation is real.

The virtual "confrontations" offered by closed-circuit television systems fall short of the face-to-face standard because they do not provide the same truth-inducing effect. The Constitution favors face-to-face confrontations to reduce the likelihood that a witness will lie. "It is always more difficult to tell a lie about a person 'to his face' than 'behind his back.'" Coy v. Iowa, 487 U.S. 1012, 1019, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988). Given the ubiquity of television, even children are keenly aware that a television image of a person (including a defendant in the case of a two-way system) is not the person something is lost in the translation. Thus, a defendant watching a witness through a monitor will not have the same truth-inducing effect as an unmediated gaze across the courtroom. We are not alone in noting that something may be lost when a two-way closed-circuit television is employed, for even the Gigante court admitted that there may be "intangible elements" of confrontation that are "reduced or eliminated by remote testimony." Gigante, 166 F.3d at 81. Admittedly, the "confrontation" offered by a one-way system is, for lack of a better phrase, even more virtual because it depends on the witness envisioning the defendant to create the "confrontation." And one can imagine that this incremental step away from face-to-face confrontations results in a further diluted truth-inducing effect. That said, the touchstone for deciding whether a "confrontation" satisfies the Constitution is whether it is likely to lead a witness to tell the truth to the same degree that a face-to-face confrontation does, and in this respect two-way systems are like one-way systems: they both fall short.

Gigante does not persuade us that "confrontation" through a two-way closed-circuit television is constitutionally equivalent to a face-to-face confrontation because it neglects the intangible but crucial differences between a face-to-face confrontation

and a "confrontation" that is electronically created by cameras, cables, and monitors. We thus join the Eleventh Circuit in rejecting *Gigante's* view of the "confrontation" that two-way closed-circuit television systems afford. *United States v. Yates*, 391 F.3d 1182, 1186 (11th Cir.2004).

Even if we assumed that a two-way system might conceivably capture the essence of the face-to-face confrontation in some situations, whether it actually did would turn on the answers to a myriad of hard logistical questions (How big must the monitor be? Where should it be placed? Where should the camera focused on the defendant be placed?) that would render the theoretical promise of the two-way system practically unattainable. ·

The district court's findings did not satisfy the *Craig* standard. The district court found that AWH's fear of the defendant was only one reason why she could not testify in open court; it did not find that AWH's fear of the defendant was the dominant reason. *See Turning Bear*, 357 F.3d at 737. The district court therefore denied Mr. Bordeaux his sixth amendment right to confront AWH.

## II.

▆ Mr. Bordeaux also maintains that the district court violated the confrontation clause by admitting a statement that AWH made out of court to an individual whom the government itself calls a "forensic interviewer." After the allegations of sexual abuse arose, government officials referred AWH to a center for child evaluation. At this center, she was interviewed by a forensic interviewer before being examined by a doctor. Consistent with the center's standard operating procedure, the interview was videotaped: as was the custom, two copies of the videotape were made— one for the patient's medical records and one for law enforcement officials. On the

videotape, AWH indicates that Mr. Bordeaux put his penis in her mouth. The district court admitted the tape into evidence, and it was shown to the jury. The district court also admitted hearsay statements from a doctor at the center who observed the interview; the doctor recounted what AWH had said during her interview.

▆ The confrontation clause bars the admission at trial of the testimonial statements of a witness who is absent from trial, unless the witness is unavailable to testify and the defendant had a prior opportunity to cross-examine her. *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 1369, 158 L.Ed.2d 177 (2004). *Crawford* does not provide a firm definition of the phrase "testimonial statement"; the Court noted, however, that the confrontation clause must be interpreted with an eye toward the principal evil at which it was directed, namely the use of "*ex parte* examinations as evidence against the accused." *Id.* at 1363. The Court explained that "[w]hatever else the term [testimonial] covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." *Id.* at 1374. The Court did not discuss what circumstances would render a witness "absent" from trial.

Mr. Bordeaux argues that AWH's statements during the forensic interview are testimonial because they were made at an interview that was set up by law enforcement officials and had a law enforcement purpose. He adds that because AWH's closed-circuit testimony contravened the confrontation clause, she was absent from the trial for *Crawford* purposes.

The government asserts that evidence about the statements does not run afoul of the confrontation clause because AWH tes-

tified at trial and the statements at the interview were made for the purpose of medical treatment and thus are not testimonial. It cites *United States v. Rouse*, 111 F.3d 561, 568–70 (8th Cir.1997), *cert. denied*, 522 U.S. 905, 118 S.Ct. 261, 139 L.Ed.2d 188 (1997), as support for the assertion that testimony via a two-way closed-circuit television counts as appearing in court for confrontation clause purposes.

We hold that Mr. Bordeaux's sixth amendment rights were violated. First of all, AWH's statements are testimonial. Statements elicited during police interrogations lie at the core of the definition of "testimonial." *Crawford*, 124 S.Ct. at 1374. A police interrogation is formal (*i.e.*, it comprises more than a series of offhand comments—it has the form of an interview), involves the government, and has a law enforcement purpose. The same is true of the interview here. The formality of the questioning and the government involvement in it are undisputed in this case. The purpose of the interview (and by extension, the purpose of the statements) is disputed, but the evidence requires the conclusion that the purpose was to collect information for law enforcement. First, as a matter of course, the center made one copy of the videotape of this kind of interview for use by law enforcement. Second, at trial, the prosecutor repeatedly referred to the interview as a "forensic" interview, meaning that it "pertain[ed] to, [was] connected with, or [was to be] used in courts of law." *Oxford English Dictionary Online Edition* (taken from second print ed.1989). That AWH's statements may have also had a medical purpose does not change the fact that they were testimonial, because *Crawford* does not indicate, and logic does not dictate, that multi-purpose statements cannot be testimonial.

Secondly, AWH did not appear at trial. A witness has not appeared for purposes of the confrontation clause when her method of testifying violated that clause. *Turning Bear*, 357 F.3d at 738. AWH's testimony via closed-circuit television violated the clause, and so we do not consider it when determining whether she appeared at trial. *See id.* The remaining question, then, is whether AWH appeared at trial when she testified in open court prior to testifying on the closed circuit system. The answer is no. In addition to expressing a strong "preference" for face-to-face encounters, the confrontation clause affords defendants the right to cross examine the witnesses against them. *Douglas v. Alabama*, 380 U.S. 415, 418–19, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965). Mr. Bordeaux did not have the chance to cross-examine AWH in open court; he was not able to cross-examine her until after she began testifying via the closed circuit system. The cross-examination was a component of AWH's closed-circuit testimony, and as the confrontation-clause violation rendered this testimony nugatory, *see Turning Bear*, 357 F.3d at 738, it nullified as well the cross-examination. Because Mr. Bordeaux was deprived of his constitutionally guaranteed opportunity to cross-examine AWH, we conclude that her open-court testimony was inadmissible, *cf. Turning Bear*, 357 F.3d at 738, and, in light of the fact that she provided no admissible testimony, that she was absent from trial, *see id.*

Our holding in *Rouse* accords with our conclusion here. In *Rouse*, we decided that the child witnesses who had testified via a two-way closed-circuit television had confronted the defendants as required by the Constitution. *Rouse*, 111 F.3d at 568–69. A corollary to this, of course, is that the witnesses appeared at the trial. In *Rouse*, however, we determined that the

witnesses had confronted the defendants because the district court had made the fear-of-the-defendant findings required by *Craig. Rouse,* 111 F.3d at 568–69. In other words, in *Rouse* we applied the same standard that we apply here. Under that standard, as we explained above, AWH did not confront Mr. Bordeaux as required by the sixth amendment and so was legally absent from trial.

In short, we decide that evidence from the forensic interview must be excluded under the confrontation clause because the interview was the sort of "*ex parte* examination" at which the confrontation clause is aimed and AWH was absent from trial. *See Crawford,* 124 S.Ct. at 1363.

### III.

■ Mr. Bordeaux maintains that the district court should have excluded as hearsay the testimony from three female witnesses who testified to out-of-court statements made to them by AWH about alleged sexual abuse. The court ruled that the statements were not hearsay because they were "consistent with the declarant's testimony and [were] offered to rebut an express or implied charge against the declarant of ... improper influence," Fed. R.Evid. 801(d)(1)(B), namely that these women convinced AWH to say that she was molested because they were angry with Mr. Bordeaux about a financial matter.

We conclude that the out-of-court statements were hearsay and the district court should have excluded them. The legal predicates for the application of the hearsay exception contained in Rule 801(d)(1)(B) were not present in this case. For Rule 801(d)(1)(B) to apply, the declarant—AWH in this instance-must testify at the trial and be subject to cross-examination concerning her out-of-court statements. Fed.R.Evid. 801(d)(1)(B). As ex-

plained above, AWH did not testify at the trial and was not subject to cross-examination. Thus, her out-of-court statements could not have come in under Rule 801(d)(1)(B) and were inadmissible hearsay.

We add a few observations that will become relevant if a second trial occurs and AWH testifies at it. For out-of-court statements consistent with a declarant's trial testimony to be admissible to rebut the charge that the declarant's trial testimony is the result of an improper influence, the out-of-court statements must pre-date the instance that the improper influence was allegedly brought to bear on the declarant. *Tome v. United States,* 513 U.S. 150, 156, 115 S.Ct. 696, 130 L.Ed.2d 574 (1995). The defendant asserts on appeal that AWH made the relevant out-of-court statements after the women had a motive to influence her. He does not specifically contend, however, that AWH made the statements after the women had first exerted an improper influence on AWH, and this is what matters. If AWH made the statements after the women had a motive to influence her, but before they actually brought their influence to bear, then the statements would be admissible under Rule 801(d)(1)(B); the "motive" explicitly referred to in the Rule is the declarant's motive to lie, *see United States v. Forrester,* 60 F.3d 52, 64 (2d Cir.1995). (The defendant does not claim that the financial dispute directly motivated AWH to lie.) But if AWH made the statements after the women supposedly exerted an improper influence on her, then they would not be admissible under Rule 801(d)(1)(B).

### IV.

■ Mr. Bordeaux maintains that the district deprived him of his right to a fair trial by excluding certain evidence from the videotaped interview of AWH. In her

interview, AWH indicated that Mr. Bordeaux had put his penis in her mouth. When asked if anyone other than Mr. Bordeaux had done bad things to her, she named her brother's friend, Luke (though she did not specify what bad things he had done).

Prior to trial, Mr. Bordeaux filed a motion for leave to offer AWH's statement about Luke under Federal Rule of Evidence 412(b)(1)(C). This subsection provides for the admission of evidence related to past sexual behavior when the "exclusion of [the evidence] would violate the constitutional rights of the defendant." Fed.R.Evid. 412(b)(1)(C). It is an exception to the general rule that "[e]vidence offered to prove that any alleged victim engaged in other sexual behavior" is inadmissible, Fed.R.Evid. 412(a)(1), the purpose of which is to protect the alleged victims of sexual assault from harassment or embarrassment. *Ellsworth v. Warden*, 333 F.3d 1, 7 (1st Cir.2003). Mr. Bordeaux argued that the statement supported the inference that someone other than the defendant might have been the source of AWH's sexual knowledge. The court did not rule on Mr. Bordeaux's source-of-knowledge argument, though it did reject a different Rule 412 argument that Mr. Bordeaux made.

The Constitution guarantees every criminal defendant a fair trial. *United States v. Ruiz*, 536 U.S. 622, 628, 122 S.Ct. 2450, 153 L.Ed.2d 586 (2002). A constituent element of this guarantee is a defendant's right, grounded in the fifth and sixth amendments, to introduce evidence in his own defense. *See United States v. Bear Stops*, 997 F.2d 451, 454 (8th Cir.1993). The right is not without limitation; it may sometimes have to "bow to accommodate other legitimate interests in the criminal trial process." *United States v. Scheffer*, 523 U.S. 303, 308, 118 S.Ct. 1261, 140 L.Ed.2d 413 (1998) (internal quotations omitted). "Restrictions on a criminal defendant's right[ ] ... to present evidence[, however,] 'may not be arbitrary or disproportionate to the purposes they are designed to serve.'" *Michigan v. Lucas*, 500 U.S. 145, 151, 111 S.Ct. 1743, 114 L.Ed.2d 205 (1991) (quoting *Rock v. Arkansas*, 483 U.S. 44, 56, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987)).

Mr. Bordeaux argues that the district court should have admitted the statements about Luke as evidence of an alternate source of AWH's knowledge about oral sex. Excluding the statement about Luke, Mr. Bordeaux posits, violated his constitutional right to a fair trial and, redundantly, Rule 412(b)(1)(C), because it inhibited his ability to mount a vigorous defense.

The district court did not violate Mr. Bordeaux's right to introduce evidence in his defense by excluding AWH's statement about Luke. To the extent one understands the statement to refer to sexual conduct, it triggers Rule 412's general prohibition against the introduction of evidence of an alleged abuse victim's past sexual conduct. *See generally Rouse*, 111 F.3d at 569 n. 7. This restriction does not violate Mr. Bordeaux's constitutional right to introduce evidence in his defense because it is not arbitrary or disproportionate to the purpose it is designed to serve. The restriction (*i.e.*, the exclusion) is not arbitrary because there exists a reasonable explanation for it—the prevention of harassment or embarrassment of AWH. Nor is the exclusion disproportionate to its purpose. AWH's statement about Luke provides scant insight into whether he is a source of her knowledge of oral sex because it does not refer to any specific sexual acts engaged in with Luke. Preventing the potential embarrassment or harassment of alleged victims of sexual abuse, moreover, is an important interest.

*See United States v. Powell,* 226 F.3d 1181, 1199 (10th Cir.2000), *cert. denied,* 531 U.S. 1166, 121 S.Ct. 1128, 148 L.Ed.2d 995 (2001). In light of the minimal probative value of the evidence and the important purpose of the exclusion, then, exclusion of the statement was not disproportionate to the purpose behind the exclusion. *Cf. United States v. White Buffalo,* 84 F.3d 1052, 1054 (8th Cir.1996); *United States v. Bartlett,* 856 F.2d 1071, 1088–89 (8th Cir. 1988).

### V.

■ Mr. Bordeaux argues that the district court should have suppressed evidence of a statement that he made to a Federal Bureau of Investigation agent because the agent had not apprised him of his *Miranda* rights. *See Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). No one disputes that the agent questioned Mr. Bordeaux, so the only issue is whether Mr. Bordeaux was in custody, for only custodial interrogations necessitate *Miranda* warnings. *See, e.g., Oregon v. Elstad,* 470 U.S. 298, 309, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985).

The agent scheduled an interview with Mr. Bordeaux. At the appointed time, the agent and an investigator with the local tribal police force arrived at Mr. Bordeaux's apartment. The agent asked Mr. Bordeaux whether he wanted to talk in the apartment or in the vehicle that the agent and the investigator had arrived in, a silver Chevrolet Tahoe (a large sport-utility vehicle), which was parked in front of Mr. Bordeaux's apartment building. Mr. Bordeaux chose to speak in the Tahoe, which was unmarked and betrayed the fact that it was a police vehicle only because it had a police radio. The agent sat in the driver's seat, Mr. Bordeaux sat in the front passenger's seat, and the investigator sat in the back seat. Though both the agent and the investigator were armed, both had concealed their weapons under their clothing.

At the outset of the interview, the agent told Mr. Bordeaux, who has a below average I.Q., that he was not under arrest, that he would not be arrested at the end of the interview, that his participation in the interview was completely voluntary, and that he could end the interview at any time. The agent also showed Mr. Bordeaux that the Tahoe's doors were unlocked. About fifty minutes into the interview, Mr. Bordeaux went into his apartment, by himself, to use the bathroom. He returned after two or three minutes. Mr. Bordeaux then told the agent that he drank heavily when his father died and that he may have done things, like abuse AWH, that he did not remember. After an hour and forty-five minutes, during which time the tribal investigator did not actively participate in the questioning, Mr. Bordeaux stopped the interview and said that he would not answer any more questions until he was represented by an attorney. At that time, the agent told Mr. Bordeaux that he had a warrant authorizing the collection of a urine sample, and he took Mr. Bordeaux to a medical clinic where the sample was collected.

■ The district court denied Mr. Bordeaux's motion to suppress his statements to the officers, finding that he was not in custody. We review the district court's custody determination *de novo* and its underlying factual findings for clear error. *United States v. Czichray,* 378 F.3d 822, 831 (8th Cir.2004), *petition for cert. filed,* 78 U.S.L.W. 3401 (U.S. Jan. 3, 2005) (No. 04–894).

The crux of this question is whether, viewing the circumstances as a whole, a reasonable person in Mr. Bordeaux's position would have believed that law enforcement officers had limited his or her freedom of movement to a degree associated

with formal arrest. *California v. Beheler,* 463 U.S. 1121, 1125, 103 S.Ct. 3517, 77 L.Ed.2d 1275 (1983); *United States v. Le-Brun,* 363 F.3d 715, 723–24 (8th Cir.2004), *cert. denied,* — U.S. —, 125 S.Ct. 1292, — L.Ed.2d — (No. 04–332), 73 U.S.L.W. 3162 (U.S. Feb. 22, 2005). Mr. Bordeaux presents his intelligence and the details of the interview as the circumstances mainly relevant in this interview. *See LeBrun,* 363 F.3d at 723. In *United States v. Griffin,* 922 F.2d 1343, 1349 (8th Cir.1990), we identified six matters to consider when determining whether a person was in custody. These matters, while instructive, *see, e.g., United States v. Galceran,* 301 F.3d 927, 929–931 (8th Cir.2002), are not dispositive: "[T]he court must consider whether the *historical facts,* as opposed to the one-step-removed *Griffin* factors, establish custody." *Czichray,* 378 F.3d at 828.

We conclude that Mr. Bordeaux was not in custody. The agent told Mr. Bordeaux that his participation in the interview was voluntary, that he could end the interview at any time, that he was not under arrest, and that he would not be arrested at the end of the interview. He had unrestrained freedom of movement during the interview—the officers allowed him to go into the apartment building by himself in the midst of the interview. He also was not subjected to any strong arm or deceptive tactics; no one menaced or tricked him. Finally, notwithstanding his low IQ, it was not reasonable for him to believe that he was in custody: No great mental acumen was required to understand his situation.

## VI.

■■■■■ Mr. Bordeaux also argues that his statement to the FBI agent that he might have done things that he did not remember was involuntary under the fifth amendment. The fifth amendment prohib-

its the introduction of involuntary statements at trial. *Chavez v. Martinez,* 538 U.S. 760, 769, 123 S.Ct. 1994, 155 L.Ed.2d 984 (2003). A statement is involuntary if it was extracted by use of physical and or psychological pressure that overbore a defendant's will. *Wilson v. Lawrence County,* 260 F.3d 946, 952 (8th Cir.2001). We cannot find that a statement was involuntary unless it is established that law enforcement officials engaged in coercive activity. *United States v. Rohrbach,* 813 F.2d 142, 144 (8th Cir.1987), *cert. denied,* 482 U.S. 909, 107 S.Ct. 2490, 96 L.Ed.2d 381 (1987). Whether a statement was involuntary is judged by the totality of the circumstances. *LeBrun,* 363 F.3d at 724. We review the district court's legal conclusions about voluntariness *de novo* and its underlying findings of fact for clear error. *Id.*

Mr. Bordeaux maintains that he was coerced because two officers interrogated him in a police vehicle without anyone else present, and neither one advised him of his *Miranda* rights. The officers did not coerce Mr. Bordeaux by choosing a psychologically overbearing setting for the interview. As we have already said, the Tahoe was unmarked and it was devoid of many of the potentially intimidating trappings of police cars (*e.g.,* a divider between the front and back seats); it was parked in front of Mr. Bordeaux's building, not a secluded spot; and the tribal investigator did not actively participate in the interview, she merely observed it from the back seat. Also, the fact that Mr. Bordeaux chose to speak in the Tahoe rather than in his home is some evidence that the Tahoe's environment was not coercive: Given that one's home is not generally thought to be foreboding, *cf. United States v. Axsom,* 289 F.3d 496, 502 (8th Cir.2002), Mr. Bordeaux's choice of the Tahoe indicates that

it was a place in which he felt comfortable, and not simply the lesser of two evils.

Nor did the officers coerce Mr. Bordeaux by neglecting to advise him of his *Miranda* rights. The Supreme Court created the *Miranda* warnings as a palliative for the inherently coercive atmosphere of a custodial interrogation. Mr. Bordeaux was not in custody at the time of his questioning and so was not entitled to be informed of his *Miranda* rights. To hold that the officers coerced Mr. Bordeaux by failing to advise him of these rights would be to hold that Mr. Bordeaux was coerced because he was not given something that he did not need. We reject the argument.

## VII.

 Mr. Bordeaux contends that without the inadmissible evidence (the closed circuit testimony, the evidence related to the forensic interview, and the other hearsay testimony) there was insufficient evidence to support his conviction and that we should therefore enter a judgment of acquittal. The argument in favor of this position is an argument by analogy. If an appellate court finds that there was insufficient evidence to support a conviction in a criminal case in which the district court did not admit any inadmissible evidence, the double jeopardy clause of the fifth amendment bars retrial and requires the appellate court to enter a judgment of acquittal. *See, e.g., United States v. Rea,* 300 F.3d 952, 957 (8th Cir.2002). So, the argument goes, if a trial court accepted inadmissible evidence and the admissible evidence was insufficient to support the conviction, we should reverse the conviction and enter a judgment of acquittal.

The Supreme Court, however, squarely rejected this contention in *Lockhart v. Nelson,* 488 U.S. 33, 40, 109 S.Ct. 285, 102 L.Ed.2d 265 (1988). The Court concluded that "[p]ermitting retrial in this instance is

not the sort of governmental oppression at which the Double Jeopardy Clause is aimed; rather it serves the interest of the defendant by affording him an opportunity to 'obtai[n] a fair readjudication of his guilt free from error.'." *Id.* at 42, 109 S.Ct. 285 (quoting *Burks v. United States,* 437 U.S. 1, 15, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978)) (alteration in *Lockhart*). The Court worried that acquittal would have been a windfall for the defendant because the prosecution might have had evidence that it withheld and would have introduced had the district court properly excluded the inadmissible evidence. *Id.* Relatedly, if the double jeopardy clause were interpreted to require courts of appeals to acquit defendants in this situation, it "would lead the government to 'over try' its cases—to introduce redundant evidence of the defendant's guilt—in order to insure itself against the risk of not being able to retry the defendant should some of its evidence be held on appeal to be inadmissible." *United States v. Tranowski,* 702 F.2d 668, 671 (7th Cir.1983), *cert. denied,* 468 U.S. 1217, 104 S.Ct. 3586, 82 L.Ed.2d 884 (1984).

Contrary to the premise of Mr. Bordeaux's argument, when considering an argument for acquittal based on the insufficiency of the evidence in a case like this one (*i.e.,* where some of the evidence should not have been admitted), we review all of the evidence admitted in the trial court. *Lockhart,* 488 U.S. at 40–41, 109 S.Ct. 285. Mr. Bordeaux's attorney conceded at oral argument that AWH's videotaped statements alone would support the conviction. Thus we have no trouble concluding that the evidence admitted at trial sufficed to sustain the conviction.

## VIII.

 The district court violated Mr. Bordeaux's sixth amendment right to con-

frontation by allowing AWH to testify by closed-circuit television and by admitting evidence related to her statements at the forensic interview. He is entitled to relief if the errors were not "so unimportant and insignificant that they may . . . be deemed harmless." *Chapman v. California*, 386 U.S. 18, 22, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *see also Turning Bear*, 357 F.3d at 740–41. We determine whether an error is harmless by considering "not what effect the constitutional error might generally be expected to have upon a reasonable jury, but rather what effect it had upon the guilty verdict in the case at hand." *Sullivan v. Louisiana*, 508 U.S. 275, 279, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993). If the admissible evidence with respect to Mr. Bordeaux's conviction was overwhelming, "then it is likely that the . . . errors were harmless." *Turning Bear*, 357 F.3d at 741.

We conclude that the district court's errors were not harmless. The only admissible evidence of Mr. Bordeaux's guilt was his statement to the FBI agent that he might have done things that he no longer remembered doing. Needless to say, this statement does not constitute overwhelming evidence of guilt. Thus the district court's constitutional errors were not harmless, and Mr. Bordeaux is entitled to relief.

The appropriate way to remedy these constitutional errors is to reverse Mr. Bordeaux's conviction and remand this case to the district court for a new trial. *United States v. Love*, 329 F.3d 981, 983 (8th Cir.2003). Because these errors call for remand, we need not decide whether the district court's admission of the hearsay testimony from the three female witnesses would have warranted a reversal. Finally, because we have decided to reverse Mr. Bordeaux's conviction, we need not ad-

dress the *Blakely* issues presented by his sentencing.

## IX.

During his closing argument, the prosecutor analogized the reasonable doubt standard to a puzzle and asserted that "every puzzle piece doesn't have to fit exactly" for the jury to find Mr. Bordeaux guilty beyond a reasonable doubt. He then stated that "[t]he defense's responsibility is to come in and kick those puzzle pieces around." Mr. Bordeaux's attorney objected and moved for a mistrial. The judge sustained the objection and denied the motion for a mistrial. On appeal, Mr. Bordeaux argues that the district court erred in denying the motion. While we do not necessarily condone the prosecutor's remark, we need not address Mr. Bordeaux's argument because other grounds require us to remand the case, and the matter is unlikely to arise on retrial.

## X.

For the above stated reasons, we reverse Mr. Bordeaux's conviction and remand for a new trial.