# Third District Court of Appeal

## State of Florida

Opinion filed June 29, 2022.
Not final until disposition of timely filed motion for rehearing.

_____

Nos. 3D21-0577 & 3D21-0537 & 3D21-2038 & 3D21-1549
Lower Tribunal Nos. 20-1026 & 20-0544 & 21-0108 & 20-1344

_____

**J.T.B., a Juvenile, and D.S., a Juvenile, and F.L., a Juvenile and W.B., a Juvenile,**
Appellants,

vs.

**The State of Florida,**
Appellee.

Appeals from the Circuit Court for Miami-Dade County, Dawn Denaro and Orlando A. Prescott, Judges.

Carlos J. Martinez, Public Defender, and Deborah Prager and John Eddy Morrison, Assistant Public Defenders, for appellants.

Ashley Moody, Attorney General, and Asad Ali and Kayla Heather McNab, Assistant Attorneys General, for appellee.

Before EMAS, MILLER, and BOKOR, JJ.

MILLER, J.

In these consolidated appeals, we are called upon to determine whether the trial court was required to render case-specific findings of necessity before ordering delinquency adjudicatory hearings to proceed via a videoconferencing platform. Each of the juveniles objected to remote witness appearances and requested to appear in court. The objections were overruled, and the requests were denied on the grounds that the COVID-19 pandemic presented an ongoing threat to the public health. Concluding that due process considerations require case-specific findings of necessity in such circumstances, we reverse.

## BACKGROUND

In the wake of the COVID-19 pandemic, the Florida Supreme Court issued a series of administrative orders directed at maintaining the operability and efficiency of the court system. See In re Comprehensive COVID-19 Emergency Measures for Florida Trial Courts, Fla. Admin. Order AOSC20-23, Amend. 8 (Nov. 23, 2020). By the time of each adjudicatory hearing, the courts were in Phase 2 of the Miami-Dade Courts' Emergency Operations protocol, which began on September 23, 2020.[1] As relevant to these proceedings, the operative administrative order at that time mandated

---

[1] The first hearing occurred on December 7, 2020, and the last occurred on June 9, 2021.

2

juvenile delinquency cases "be conducted remotely if ordered by the chief judge or the presiding judge or, if not, . . . be conducted in person." Id. at § III.E.(2)b.  In conformity with this prerogative, the adjudicatory hearing of each juvenile, with the exception of D.S., was ordered to occur fully remotely via the Zoom videoconferencing platform.  At D.S.'s hearing, the prosecutor and lead witness were permitted to appear in court, while the juvenile and his sole witness, his mother, appeared via the Zoom platform on a shared cell phone.  Each of the juveniles objected, and each presiding judge relied upon the pandemic and the Florida Supreme Court's administrative order to justify the remotely conducted proceeding.  Delinquency findings were rendered, and the instant appeals ensued.

## STANDARD OF REVIEW

We review a claim of deprivation of procedural due process de novo. VMD Fin. Servs., Inc. v. CB Loan Purchase Assocs., LLC, 68 So. 3d 997, 999 (Fla. 4th DCA 2011).

## LEGAL ANALYSIS

Under the United States and Florida Constitution, "[n]o person shall be deprived of life, liberty or property without due process of law."  Art. I, § 9, Fla. Const.; see Amend. XIV., U.S. Const.  In crafting the contours of the right, the Supreme Court has found that the due process protections afforded

3

to criminal defendants, including "notice, counsel, confrontation, cross-examination, and standard of proof," are similarly extended to juveniles in delinquency proceedings. McKeiver v. Pennsylvania, 403 U.S. 528, 543 (1971). These rights are implicit in achieving the laudatory goal of "fundamental fairness" in adjudications of delinquency. Id.

As discussed by the United States Supreme Court in an early decision, the primary objective of confrontation is to

> prevent depositions or ex parte affidavits . . . being used against the prisoner in lieu of a personal examination and cross-examination of the witness, in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief.

Mattox v. United States, 156 U.S. 237, 242–43 (1895). In this regard, "face-to-face confrontation enhances the accuracy of factfinding by reducing the risk that a witness will wrongfully implicate an innocent person." Maryland v. Craig, 497 U.S. 836, 846 (1990).

Neither the United States Supreme Court nor the Florida Supreme Court has directly addressed whether conducting an adjudicatory hearing by a videoconferencing platform, absent case-specific findings, violates a juvenile's due process right to confrontation. A trilogy of United States Supreme Court decisions, however, have carefully examined the

4

confrontation rights of criminal defendants in circumstances where witness testimony falls short of in-person, face-to-face confrontation.  See Coy v. Iowa, 487 U.S. 1012 (1988); Maryland v. Craig, 497 U.S. 836 (1990); Crawford v. Washington, 541 U.S. 36 (2004).

All three decisions emphasize that confrontation rights are not only symbolic but also enhance reliability by furthering the truth-seeking function of the adjudicatory process.  See Coy, 487 U.S. at 1019 (quoting Jay v. Boyd, 351 U.S. 345, 375–76 (1956) (Douglas, J., dissenting)) ("A witness 'may feel quite differently when he has to repeat his story looking at the man whom he will harm greatly by distorting or mistaking the facts.' . . . [E]ven if [a] lie is told, it will often be told less convincingly."); Craig, 497 U.S. at 846 ("[T]he Confrontation Clause . . . ensur[es] that evidence admitted against an accused is reliable and subject to the rigorous adversarial testing that is the norm of Anglo-American criminal proceedings. . . . [F]ace-to-face confrontation enhances the accuracy of factfinding by reducing the risk that a witness will wrongfully implicate an innocent person."); Crawford, 541 U.S. at 61 ("[T]he [Confrontation] Clause's ultimate goal is to ensure reliability of evidence, but it is a procedural rather than a substantive guarantee.  It commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination."); see

5

also <u>California v. Green</u>, 399 U.S. 149, 158 (1970) (internal quotations and footnote omitted) ("Confrontation: (1) insures that the witness will give his statements under oath—thus impressing him with the seriousness of the matter and guarding against the lie by the possibility of a penalty for perjury; (2) forces the witness to submit to cross-examination, the greatest legal engine ever invented for the discovery of truth; (3) permits the jury that is to decide the defendant's fate to observe the demeanor of the witness in making his statement, thus aiding the jury in assessing his credibility."); <u>Lee v. Illinois</u>, 476 U.S. 530, 540 (1986) ("The right to confront and to cross-examine witnesses is primarily a functional right that promotes reliability in criminal trials.").

In the first decision, <u>Coy</u>, the Supreme Court found a violation of confrontation rights when, as authorized by an Iowa statute, a large screen was placed between the defendant and minor witnesses testifying about alleged sexual abuse. 487 U.S. at 1014, 1022. Iowa argued there was no constitutional violation because the statute created a legislatively imposed presumption of trauma. <u>Id.</u> at 1021. After exploring the historical significance of the right to confrontation, the Court stated, "[w]e have never doubted . . . that the Confrontation Clause guarantees the defendant a face-to-face meeting with witnesses appearing before the trier of fact." <u>Id.</u> at 1016. This

guarantee "relate[s] both to appearances and to reality," id. at 1017, and "[t]he perception that confrontation is essential to fairness has persisted over the centuries because there is much truth to it." Id. at 1019.

The Court further observed that physical confrontation "ensure[s] the integrity of the fact-finding process," id. at 1020 (quoting Kentucky v. Stincer, 482 U.S. 730, 736 (1987)), by allowing the trier of fact to view the witness and "draw its own conclusions." Id. at 1019. This observation was tempered, however, by the caveat that confrontation rights are "not absolute" and, instead, "may give way to other important interests." Id. at 1020.

The Court ultimately found that the procedure employed violated the defendant's confrontation rights because there were "no individualized findings that these particular witnesses needed special protection," and "something more than the type of generalized finding underlying such a statute is needed." Id. at 1021.

In the second decision, Craig, the Supreme Court rejected a Confrontation Clause challenge to a Maryland statute authorizing child abuse victims to testify by one-way, closed-circuit television in certain delineated circumstances. 497 U.S. at 857. In order to invoke the statutory procedure, the trial judge was first required to "determin[e] that testimony by the child victim in the courtroom [would] result in the child suffering serious

7

emotional distress such that the child cannot reasonably communicate." Id. at 841 (alteration in original) (quoting Md.Cts. & Jud.Proc.Code § 9– 102(a)(1)(ii) (1989)). Once the procedure was invoked, the child, prosecutor, and defense attorney were directed to a separate room, while the judge, jury, and defendant remained in the courtroom. Id. The child was then examined and cross-examined in the separate room, while a video monitor contemporaneously recorded and displayed the testifying child to those in the courtroom. Id. The child could not see the defendant, but the defendant remained in communication with counsel, and objections were simultaneously raised and ruled upon. Id. at 842.

The Court observed that "the Confrontation Clause reflects a *preference* for face-to-face confrontation," id. at 849 (quoting Ohio v. Roberts, 448 U.S. 56, 63 (1980)), but criminal defendants do not have "the *absolute* right to a face-to-face meeting with witnesses against them at trial." Id. at 844. Instead, "a defendant's right to confront accusatory witnesses may be satisfied absent a physical, face-to-face confrontation at trial only where denial of such confrontation is necessary to further an important public policy and only where the reliability of the testimony is otherwise assured." Id. at 850. The Court concluded that "use of the one-way closed circuit television procedure, where necessary to further an important state interest,

8

does not impinge upon the truth-seeking or symbolic purposes of the Confrontation Clause." Id. at 852. "The requisite finding of necessity," however, "must of course be a case-specific one." Id. at 855.

In the third decision, Crawford, the Supreme Court established a new framework for analyzing Confrontation Clause claims. 541 U.S. at 67–68. There, the Court rejected Ohio v. Roberts and its "indicia of reliability" test as reflective of "a fundamental failure on our part to interpret the Constitution in a way that secures its intended constraint on judicial discretion." Id. at 67. After discussing the history of the Sixth Amendment, the Court observed that "the principal evil at which the Confrontation Clause was directed was the civil-law mode of criminal procedure, and particularly its use of *ex parte* examinations as evidence against the accused," id. at 50, and "the Framers would not have allowed admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify and the defendant had [been afforded] a prior opportunity for cross-examination." Id. at 53–54.

The Court rejected balancing tests as unpredictable and subjective, id. at 63–64, and held that "[w]here testimonial evidence is at issue, . . . the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." Id. at 68.

As observed by the late Justice Scalia, these three cases yield the conclusion that confrontation rights

> ordinarily . . . compel accusers to make their accusations *in the defendant's presence*—which is not equivalent to making them in a room that contains a television set beaming electrons that portray the defendant's image. Virtual confrontation might be sufficient to protect virtual constitutional rights; I doubt whether it is sufficient to protect real ones.

Order of the Supreme Court, 207 F.R.D. 89, 94 (2002).

Consistent with this reasoning, many courts have held that the constitutional rights of the accused are violated by the use of two-way, live, remote video technology at trial in the absence of a case-specific finding that the procedure is necessary to further an important public policy and the reliability of the testimony is otherwise assured. See United States v. Bordeaux, 400 F.3d 548, 554 (8th Cir. 2005); United States v. Yates, 438 F.3d 1307, 1314–15 (11th Cir. 2006); United States v. Abu Ali, 528 F.3d 210, 240–41 (4th Cir. 2008); United States v. Carter, 907 F.3d 1199, 1205–06 (9th Cir. 2018); State v. Mercier, 479 P.3d 967, 974 (Mont. 2021); State v. Thomas, 376 P.3d 184, 193–94 (N.M. 2016); Bush v. State, 193 P.3d 203, 214–15 (Wyo. 2008); Haggard v. State, 612 S.W.3d 318, 327 (Tex. Crim. App. 2020); C.S. v. State, 131 N.E.3d 592, 600–01 (Ind. 2019); C.A.R.A. v. Jackson Cnty. Juv. Off., 637 S.W.3d 50, 64–66 (Mo. 2022).

None of these cases, however, involve the confrontation rights attendant to due process in juvenile delinquency proceedings. In this context, the right to confrontation stems from the unearthing of "a gap between the originally benign conception of the [juvenile justice] system and its realities" by "mak[ing] applicable in juvenile proceedings constitutional guarantees associated with traditional criminal prosecutions." Breed v. Jones, 421 U.S. 519, 528–29 (1975). Consequently, "determining the relevance of constitutional policies, like determining the applicability of constitutional rights, in juvenile proceedings, requires the courts eschew 'the "civil" label-of-convenience which has been attached to juvenile proceedings.'" Id. at 529 (quoting In re Gault, 387 U.S. 1, 50 (1967)). Instead, sufficient safeguards must be employed to ensure juvenile proceedings are "fundamentally fair." § 985.35(2), Fla. Stat. (2022); see McKeiver, 403 U.S. at 543.

Adhering to these principles, along with Craig and its progeny, our sister court recently determined that conducting a juvenile adjudicatory hearing remotely without first convening a hearing and rendering case-specific findings of necessity runs afoul of due process. See T.H. v. State, 47 Fla. L. Weekly D681 (Fla. 2d DCA Mar. 18, 2022). We find the Second

11

District Court of Appeal's logic persuasive.[2]  The right to confrontation existed long before the constitution that enshrined it, and there is no clear distinction between confrontation rights under the Sixth Amendment and those emanating from due process.  See Crawford, 541 U.S. at 43.

Further, although Craig involved the use of one-way, closed-circuit television, the reasoning engaged by the United States Supreme Court applies with equal force to live, remote, two-way video technology.

> The virtual "confrontations" offered by closed-circuit television systems fall short of the face-to-face standard because they do not provide the same truth-inducing effect.  The Constitution favors face-to-face confrontations to reduce the likelihood that a witness will lie.  "It is always more difficult to tell a lie about a person 'to his face' than 'behind his back.'" . . . [T]he touchstone for deciding whether a "confrontation" satisfies the Constitution is whether it is likely to lead a witness to tell the truth to the same degree that a face-to-face confrontation does, and in this respect two-way systems are like one-way systems: they both fall short.

Bordeaux, 400 F.3d at 554 (quoting Coy, 487 U.S. at 1019).

Here, in each of these consolidated cases, the juvenile objected to the trial court's decision to proceed with a remotely conducted adjudicatory

---

[2] We are cognizant that the Fourth District Court of Appeal recently determined that a remote adjudicatory hearing did not violate the due process rights of a juvenile accused.  See E.A.C. v. State, 324 So. 3d 499, 507 (Fla. 4th DCA 2021).  There, however, the juvenile, attorneys, and judge were present in the courtroom, and the trial court conducted a threshold inquiry.  Id. at 501–02.

hearing.  The trial court overruled the objection but failed to render case-specific findings of necessity.  In three of the four cases, D.S. being the lone exception,[3] the entire proceeding was conducted on a remote platform, meaning none of the participants—parties, witnesses, or counsel—were physically in the courtroom with the judge, who also served as factfinder, during the adjudicatory hearing.  In the absence of case specific findings, we are left to speculate as to whether the request for in-person appearances could have been readily accommodated or a short delay would have allowed for a return to the courtroom.  Indeed, in the instance of D.S., the record supports the proposition there was no impediment to accommodating in-court appearances.

Finally, the notion that the language of the administrative order was sufficient to dispel constitutional concerns is unavailing.  It is axiomatic that the trial court is charged with applying procedural rules in a manner consistent with due process.  Further, while the administrative order presupposed the continuation of the public health crisis, as in Coy, this type of generalized presumption cannot serve as a substitute for case-specific findings of necessity.  Accordingly, we conclude that, under these

---

[3] As previously mentioned, at D.S.'s hearing, the prosecutor and lead witness were permitted to appear in court, while the juvenile and his sole witness, his mother, appeared via the Zoom platform on a shared cell phone.

circumstances, the failure to render case-specific findings of necessity justifying conducting the juvenile adjudicatory hearings remotely resulted in a denial of due process. Thus, we reverse and remand for new adjudicatory hearings.

Reversed and remanded.